**HEYMAN ENERIO**
**GATTUSO&HIRZEL**
LLP
PRACTICING THE ART OF LAW

300 DELAWARE AVENUE • SUITE 200 • WILMINGTON, DELAWARE 19801
TEL: (302) 472.7300 • FAX: (302) 472.7320 • WWW.HEGH.LAW

Direct Dial:   (302) 472-7311
Email:   dgattuso@hegh law

March 11, 2020

**VIA CM-ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States District Court
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570



Public Version Filed: March 18, 2020

Re:   *H. Lundbeck A/S, et al. v. Apotex Inc. et al.*, C.A. No. 18-088 (consolidated)

Dear Judge Hall:

Defendants write in response to Plaintiffs' letter brief requesting that the Court disqualify Defendants' expert, Dr. Anthony Rothschild, from serving as an expert witness in the above-captioned case.   For the reasons explained below, Defendants respectfully request that the Court deny Plaintiffs' request.

"The party moving for disqualification [here, Plaintiffs] bears the burden of proof with respect to each factor" of the three-factor inquiry applied by courts in this circuit to determine whether to disqualify an expert.   *See Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. 14-874, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015); *Novartis AG v. Apotex Inc.*, No. 09-5614, 2011 WL 691594, at *1 (D.N.J. Jan. 24, 2011).   First, it must be "objectively reasonable for the first party who claims to have retained the expert to conclude a confidential relationship existed." *See Merck*, 2015 WL 5163035, at *2 (citation omitted).   Second, confidential or privileged information must have been disclosed to the expert and that information must "relate[ ] to this specific litigation." *Novartis*, 2011 WL 691594, at *3.   Third, courts consider "the public interest in allowing or not allowing an expert to testify." *Merck*, 2015 WL 5163035, at *2.

Plaintiffs point to confidential relationships under the first factor, but make only vague claims that Dr. Rothschild actually received confidential information, let alone any that is pertinent to this litigation.   As such, Plaintiffs have failed to meet their burden of proving that either of the purported confidential relationships they identify warrants disqualification.   *See Novartis*, 2011 WL 691594, at *2–3.

**I.   Plaintiffs Have Not Shown that Dr. Rothschild Received any Information that Remains Confidential in Connection with his Role as a Principal Investigator Nearly 10 Years Ago**

Dr. Rothschild does not have any confidential information of Plaintiffs.   Dr. Rothschild was a clinical investigator who receive ███████████████████████████████████████████████████████████████████████████   Whatever confidential information Dr. Rothschild may have received many years ago, is now public.

Plaintiffs point to a ██████████████████████████████████████████████████████████████████████████████████████████████████   There are several flaws in Plaintiffs' reliance on ███████████

- First, Plaintiffs fail to address that whatever limited confidential information Dr. Rothschild may have received from Plaintiffs related to Study No. 310 was subsequently *published* in *European Neuropsychopharmacology*. (D.I. 704, Ex. 7, 2012 Article.) Information that Plaintiffs voluntarily made public cannot now serve as a basis to disqualify Dr. Rothschild. *See Thomas Global Grp. LLC v. Watkins*, 2:13-cv-4864, 2016 WL 5719678, at *2 (D.N.J. Sept. 29, 2016) ("It is well established that once confidential information has been published, it is no longer confidential."). Dr. Rothschild does not recall receiving any information from Plaintiffs related to Study No. 310 other than the information that was published in the *Neuropsychopharmacology*. (Rothschild Decl. ¶ 8.) Indeed, Plaintiffs did not respond to Defendants' inquiry seeking ████████████████████████████████████████████████████████████████████████████████████████████████████

- Second, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That study report, which was produced in this litigation, contains no privileged or strategic information. (Ex. B, Study Report.) Courts have repeatedly found that an expert's prior access to this type of technical information that is discoverable in litigation is not grounds for disqualification. *See, e.g., High Point Sarl v. Sprint Nextel Corp.*, No. 09-cv-2269, 2013 WL 501783, at *7 (D. Kan. Feb. 8, 2013) (recognizing "distinction between confidential information that relates to purely technical or business information that is discoverable in litigation, and information that relates to confidential communications concerning legal strategies or other litigation-related issues that is privileged and not otherwise subject to discovery"); *Palomar Med. Techs., Inc. v. Tria Beauty, Inc.*, No. 09-cv-11081, 2012 WL 517532, at *4 (D. Mass. Feb. 15, 2012); *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191–92 (S.D.N.Y. 1988) (holding "[c]ommunication based upon technical information as opposed to legal advice" insufficient to disqualify an expert). It makes little sense that an expert be disqualified from viewing confidential information under a protective order where the objecting party ████████████████████████████████████████████████████████████████████

- Third, Study No. 310 is not relevant to the issues in this case. Plaintiffs' U.S. Patent Nos. 9,125,910 and 9,278,096 concern the use of vortioxetine for treating cognitive impairment and reducing sexual dysfunction, respectively. By contrast, Study No. 310 concerns the use of vortioxetine for an unapproved indication, treatment of generalized anxiety disorder, and did not analyze cognitive impairment or sexual dysfunction.

Plaintiffs' complaints about ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ they would have been of the type that would have been published on ClinicalTrials.gov or other publications about those trials. (*Id.*)

## II. Dr. Rothschild Should Not Be Disqualified Based on Engagements that Ended a Decade Ago for Other Drug Products and Other Patents

Plaintiffs again fail to meet their burden of showing that Dr. Rothschild had access to Plaintiffs' confidential or privileged information related to this specific litigation through his prior engagements by Lundbeck related to Lexapro® and Celexa®. *See Novartis*, 2011 WL 691594, at *3–4. These prior cases

involved different patents and different drug products than the present case and thus any confidential information Dr. Rothschild would have received in those matters is not related to this case.

Plaintiffs point to the fact that some of the prior art **publications** cited in Defendants' invalidity contentions discuss these other drugs.  (D.I. 704, at 2.)   However, the fact that Dr. Rothschild may be called on to discuss public documents related to these other drug products does not disqualify him as an expert. Likewise, there is nothing to suggest that Dr. Rothschild received confidential information during the course of his prior engagements related to the head-to-head clinical study Plaintiffs reference, which occurred years after Dr. Rothschild's other work was complete.

Plaintiffs also gloss over the fact that the most recent of the cases referenced by Plaintiffs was terminated in May 2010.   To the extent Dr. Rothschild remembers anything of substance related to these 10+ year old cases, he will continue to maintain the confidentiality of that information and Defendants have no intention of inquiring about any such information in connection with their engagement of Dr. Rothschild to opine regarding vortioxetine.   (Rothschild Decl. ¶ 10.)

The facts in favor of allowing Dr. Rothschild to testify here are even more compelling than those that prompted the District of New Jersey to deny Apotex's motion to disqualify Dr. Alexander Klibanov in *Novartis v. Apotex*, 2011 WL 691594.   In *Novartis*, Dr. Klibanov's access to Apotex's legal strategies over the course of nine engagements that ended just two years prior did not disqualify him.   The court reasoned that "Apotex failed to identify any confidential information specific to the subject matter [of the] litigation shared with Dr. Klibanov" where the cases involved different pharmaceutical products, patents, and theories of infringement/invalidity.   *Id.* at *4.   Similarly, Plaintiffs have not demonstrated that Dr. Rothschild possesses any confidential information related to the subject matter of this litigation as a result of engagements that ended 10 years ago concerning different drugs and unrelated patents.[1]

### III. Public Policy Weighs Against Disqualification

Public policy weighs in favor of allowing Dr. Rothschild to work with Defendants.   Just as non-competition agreements should be construed narrowly to permit persons to obtain gainful employment (*e.g.*, *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp.3d 617, 683 (E.D. Pa. 2014)), Dr. Rothschild should not be precluded from serving as an expert in this matter based on engagements that ended 10 years ago and concerned different subject matter than the present litigation.   Unlike the cases cited by Plaintiffs, Dr. Rothschild is neither a former long-term employee of Plaintiffs, nor did he enter a contract with Plaintiffs prohibiting him from working for other parties in perpetuity.   *See WesternGeco LLC v. ION Geophysical Corp.*, No. 09-cv-1827, 2010 WL 2266610, at *1 (S.D. Tex. Jun. 2, 2010) (disqualifying expert who was an employee of the party seeking disqualification "for nearly two decades"); *Pellerin v. Honeywell Int'l Inc.*, No. 11-cv-1278, 2012 WL 112539, at *2–3 (S.D. Cal. Jan. 12, 2012) (disqualifying exert who was employed from 1996-2006 by party seeking disqualification); *Oracle Corp. v. Druglogic, Inc.*, No. 11-910, 2012 WL 2244305, at *5, 7 (N.D. Cal. June 15, 2012) (engagement would violate prior settlement with expert promising not to disparage the moving parties' intellectual property).

Finally, Plaintiffs incorrectly state that there is no prejudice to Defendants.   While Defendants recently engaged a second expert with clinical experience similar to Dr. Rothschild, it would be prejudicial to Defendants to have to switch experts just weeks before reports are due on April 3.[2]

---

[1]  By contrast, in the cases cited by Plaintiffs, the disqualified experts "consulted on the very project that culminated in the bottle design at issue in [the present] litigation" or consulted on a patent application that "claimed priority to the same PCT application" as the present patent-in-suit.   *Auto-Kaps, LLC v. Clorox Co.*, No. 15-cv-1737, 2016 WL 1122037, at *3 (E.D.N.Y. Mar. 22, 2016); *MorphoSys AG v. Janssen Biotech, Inc.*, No. 1:16-cv-221 (D. Del. Jul. 18, 2017), D.I. 161 at 2.

[2]  Defendants' opening report on invalidity will focus primarily on public prior art references for which there was no need to disclose Dr. Rothschild under the protective order before discussing with him.

Respectfully,

*/s/ Dominick T. Gattuso*

Dominick T. Gattuso (#3630)

cc:      Clerk of Courts (Via CM-ECF & Hand Delivery)
            Counsel of Record (Via Electronic Mail)