# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| H. LUNDBECK A/S, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-88-LPS |
| | ) | |
| APOTEX INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Having reviewed the parties' motion and letters regarding Defendants' use of Dr. Rothschild as an expert (D.I. 698, 704, 711), and having heard argument on March 13, 2020, IT IS HEREBY ORDERED that Plaintiffs' requests to disqualify Dr. Rothschild as an expert and to prevent him from receiving access to materials designated as Confidential Information under the Protective Order are DENIED.

"Federal Courts have the inherent power to disqualify expert witnesses in certain circumstances to protect the integrity of the adversary process and to promote public confidence in the legal system." *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995). There is no bright-line rule. Instead, courts consider (1) whether the expert had a confidential relationship with the adversary and (2) whether the adversary disclosed confidential information to the expert. *See, e.g., Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, No. 14-874, 2015 WL 5163035, *2 (D. Del. Sept. 3, 2015). Courts also weigh the public interest in allowing or not allowing the expert to testify. *Id.*

Plaintiffs first argue that Dr. Rothschild should be disqualified because he served as a "principal investigator" in certain of Plaintiffs' clinical studies involving vortioxetine. The record reflects that Dr. Rothschild was one of many "principal investigators" that enrolled subjects in four

"double-blind" clinical studies (the last of which ended in 2013). In two of the studies, Dr. Rothschild enrolled only a single subject. After one of those studies, Plaintiffs provided Dr. Rothschild with clinical data, some of which Dr. Rothschild (and others) incorporated into a 2012 published article that concluded that vortioxetine did not improve symptoms of generalized anxiety disorder (compared with placebo) over the study period.

For purposes of this decision, I assume that Plaintiffs had a confidential relationship with Dr. Rothschild. But Plaintiffs have not persuaded me that Dr. Rothschild received the type of information that would require disqualification. Plaintiffs' argument—that Dr. Rothschild should be disqualified from this case because he participated in clinical studies involving the same drug—certainly has facial appeal. But having reviewed the materials submitted by the parties, including Dr. Rothschild's declaration describing the nature of the materials he received in connection with those studies[1] (which does not appear to be challenged by Plaintiffs), it does not appear that Dr. Rothschild received any privileged information. Moreover, the types of technical information he did receive are discoverable by Defendants, thus minimizing the potential for an unfair advantage to Defendants. *See High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269, 2013 WL 501783, at *7 (D. Kan. Feb. 8, 2013); *Palomar Med. Techs.*, *Inc. v. Tria Beauty, Inc.*, No. 09-11081, 2012 WL 517532, at *4 (D. Mass. Feb. 15, 2012) (denying motion to disqualify expert physician who had conducted two clinical studies for the adversary; expert had not received litigation strategy, work-product, or privileged information from the adversary, which "weigh[ed] strongly against disqualification"); *Space Sys./Loral*, 1995 WL 686369, *3; *see also Auto-Kaps, LLC v. Clorox*

---

[1] My decision does not rely on Dr. Rothschild's averments that he does not remember the actual information received.

*Co.*, No. 15-1737, 2016 WL 1122037, at *3 (E.D.N.Y. Mar. 22, 2016) (granting motion to disqualify where plaintiff's expert "consulted on the very project that culminated in the [accused product]" under circumstances where it was "not difficult to infer that [the expert] was given or exposed to confidential information relating to [the defendant's] strategy regarding its intellectual property"). It also appears that much of the information from one study is public, as the results were published.

Plaintiffs rely on a line of cases in which courts disqualified experts who received only technical, but not privileged, information from the adversary. *See Eastman Kodak Co. v. Agfa–Gevaert N.V.*, No. 02-6564, 2003 WL 23101783, at *1 (W.D.N.Y. Dec. 4, 2003); *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2012 WL 3870563, at *1 (E.D. Mich. Sept. 6, 2012). But in those cases, the proposed experts had been longstanding employees of the adversaries, during which they acquired deep technical knowledge relevant to the litigation. *See Thompson*, 2012 WL 3870563, at *1 (plaintiff's proposed expert was a "senior-level employee at [defendant] from 1994 until his resignation in 2008"); *Eastman Kodak*, 2003 WL 23101783, at *1 (defendant's expert having "previously worked at [plaintiff] for eighteen (18) years"). Disqualification under those circumstances protects the integrity of the adversary process and promotes public confidence in the legal system regardless of whether the information disclosed qualifies as privileged or work product. *See Thompson*, 2012 WL 3870563, at *7 (disqualifying former fourteen-year, senior-level employee from testifying as a technical expert for the adversary because it was "analogous to an expert switching sides mid-litigation").

Here, in contrast, Dr. Rothschild did not have a longstanding employment relationship with Plaintiffs. He enrolled subjects in four clinical studies during which he received limited

3

information from Plaintiffs. And, for one of those studies, he received aggregated study data that he used to co-author a paper that concluded that vortioxetine was not effective to treat a particular (unapproved) indication.[2] Under the particular facts here, I am not persuaded that the "drastic measure" of disqualification is warranted. *Thompson*, 2012 WL 3870563, at *2.

Plaintiffs next argue that Dr. Rothschild should be disqualified because he formerly served as a consultant and expert to Plaintiff Lundbeck in cases involving Lexapro® (escitalopram) and Celexa® (citalopram). Those cases involved different patents. The last of those cases was terminated in May 2010, nearly a decade ago. For purposes of this decision, I accept as true Plaintiffs' assertions that Dr. Rothschild received confidential and privileged information during those engagements. But I am not persuaded that the information he received in decade-old litigations involving different drugs would require his disqualification from this case.

Plaintiffs make the conclusory assertion that Dr. Rothschild was given access to Lundbeck's "IP strategy" in the Lexapro® and Celexa® cases. However, nothing in the record suggests that Dr. Lundbeck was privy to any privileged information other than the trial strategy used by Lundbeck for those particular cases. Plaintiffs also contend that a head-to-head study involving escitalopram and vortioxetine is "at the center of the parties' infringement dispute regarding the '096 patent." (D.I. 704 at 2.) But the record indicates that the study was not undertaken until years after Dr. Rothschild's Lundbeck engagements were complete. Having carefully reviewed the record, and the remainder of the parties' arguments, I am not persuaded that the nature of the confidential information Dr. Rothschild received requires his disqualification

---

[2] Defendants state, and Plaintiffs have not disputed, that the use of vortioxetine to treat generalized anxiety disorder is not being litigated in this case.

4

from this case. *See Novartis AG v. Apotex Inc.*, No. 09-5614, 2011 WL 691594, at *3-4 (D.N.J. Jan. 24, 2011) (denying request to disqualify expert who had previously served as an expert for the adversary in other cases, where the adversary failed to identify specific confidential information relevant to the current litigation that had been shared with the expert; general allegations that the expert was privy to adversary's "legal strategies and the opinions of its legal counsel" and "regulatory strategies" were insufficient), *report and recommendation adopted,* 2011 WL 611706 (D.N.J. Feb. 8, 2011).

For the foregoing reasons, Plaintiffs' requests are DENIED.

Dated: March 18, 2020

Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE