```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   H. LUNDBECK A/S, TAKEDA PHARMACEUTICAL
     COMPANY LTD., TAKEDA PHARMACEUTICAL   :    CIVIL ACTION
 5   U.S.A., INC., TAKEDA PHARMACEUTICALS  :
     INTERNATIONAL AG, and TAKEDA          :
 6   PHARMACEUTICALS AMERICA, INC.,        :
                                           :
 7              Plaintiffs,                :    (Consolidated)
     v                                     :
 8                                         :
     APOTEX INC., APOTEX CORP., and APOTEX :
 9   RESEARCH PRIVATE LIMITED, et al.,     :
                                           :    NO. 18-88-LPS
10              Defendants.
                                    - - -
11
                         Wilmington, Delaware
12                       Friday, June 26, 2020
                         Telephone Conference
13
                              - - -
14
     BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge
15
                              - - -
16   APPEARANCES:

17
                 MORRIS NICHOLS ARSHT & TUNNELL, LLP
18               BY:  JACK B. BLUMENFELD, ESQ., and
                      MEGAN ELIZABETH DELLINGER, ESQ.
19
                      and
20
                 COVINGTON & BURLING, LLP
21               BY:  GEORGE F. PAPPAS, ESQ.,
                      EINAR STOLE, ESQ., and
22                    BRIANNE BHARKHDA, ESQ.
                      (Washington, District of Columbia)
23
                         Counsel on behalf of Plaintiffs
24

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter
```

```
 1   APPEARANCES:  (Continued)

 2

 3                HEYMAN ENERIO GATTUSO & HIRZEL, LLP
                  BY:  DOMINICK T. GATTUSO, ESQ.

 4
                      and

 5                BRINKS GILSON & LIONE, LLP
                  BY:  MARK H. REMUS, ESQ., and
 6                     LAURA A. LYDIGSEN, ESQ.
                      (Chicago, Illinois)

 7
                      and

 8
                  BRINKS GILSON & LIONE, LLP
 9                BY:  JIEUN LEE, ESQ.
                      (Washington, District of Columbia)

10
                          Counsel for Sandoz Inc., Sandoz AG,
11                        and Lek Pharmaceuticals D.D.

12
                  RICHARDS LAYTON & FINGER, P.A.
13                BY:  STEVEN J. FINEMAN, ESQ.

14                    and

15                UPADHYE CWIK LLP
                  BY:  YIXIN H. TANG, ESQ., and
16                     SHASHANK UPADHYE, ESQ.
                      (Chicago, Illinois)

17
                          Counsel for Prinston Pharmaceutical Inc.,
18                        and Zhejiang Huahai Pharmaceutical Co., Ltd.

19
                  YOUNG CONAWAY STARGATT & TAYLOR, LLP
20                BY:  PILAR G. KRAMAN, ESQ.

21                    and

22                LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, LLP
                  BY:  AARON S. ECKENTHAL, ESQ.
23                     (Cranford, New Jersey)

24                        Counsel for Alkem Laboratories Ltd.

25
```

1    APPEARANCES:   (Continued)

2

3                    PHILLIPS, McLAUGHLIN & HALL, P.A.
                     BY:   JOHN C. PHILLIPS, JR., ESQ.

4                              Counsel for Sigmapharm Laboratories, LLC,
                               Zydus Pharmaceuticals (USA) Inc., and
5                              Unichem Laboratories, Limited

6                         and

7                    LOCKE LORD
                     BY:   DAVID B. ABRAMOWITZ, ESQ.,
8                          CAROLYN A. BLESSING, ESQ., and
                           TIMOTHY F. PETERSON, ESQ.
9                          (Chicago, Illinois)

10                             Counsel for Zydus Pharmaceuticals (USA)
                               Inc., and Unichem Laboratories, Limited
11

12                        and

                     HUSCH BLACKWELL, LLP
13                   BY:   THOMAS P. HENEGHAN, ESQ.
                           (Madison, Wisconsin)
14

15                        and

                     HUSCH BLACKWELL, LLP
16                   BY:   MARC R. WEZOWSKI, ESQ.
                           (Chicago, Illinois)
17

                               Counsel for Sigmapharm Laboratories, LLC
18

19                   RICHARDS LAYTON & FINGER, P.A.
                     BY:   RENÉE M. DELCOLLO, ESQ.
20

                          and
21

                     MERCHANT & GOULD, P.C.
22                   BY:   CHRISTOPHER J. SORENSON, ESQ., and
                           KAREN L. BECKMAN, Ph.D., ESQ.
23                         (Minneapolis, Minnesota)

24                             Counsel for Macleods Pharmaceuticals
                               Limited
25

```
 1    APPEARANCES:   (Continued).

 2
                    DEVLIN LAW FIRM, LLP
 3                  BY:  VERONICA SCHAD, ESQ.

 4                      and

 5                  ALSTON & BIRD LLP
                    BY:  DEEPRO R. MUKERJEE, ESQ., and
 6                      LANCE SODERSTROM, ESQ.
                       (New York, New York)
 7
                       and
 8
                    ALSTON & BIRD LLP
 9                  BY:  JOSEPH M. JANUSZ, ESQ.
                       (Charlotte, North Carolina)
10
                           Counsel for Lupin Limited and
11                         Lupin Pharmaceuticals, Inc.

12
                    BUCHANAN INGERSOLL & ROONEY, P.C.
13                  BY:  GEOFFREY GRAHAM GRIVNER, ESQ.

14                     and

15                  BUCHANAN INGERSOLL & ROONEY, P.C.
                    BY:  GRANT S. SHACKELFORD, ESQ.
16                     (Alexandria, Virginia)

17                     and

18                  BUCHANAN INGERSOLL & ROONEY, P.C.
                    BY:  MATTHEW L. FEDOWITZ, ESQ.
19                     (Washington, District of Columbia)

20                         Counsel for MSN Private Laboratories
                           Limited, MSN Pharmaceuticals, Inc.,
21                         and MSN Pharmachem Private Limited

22

23

24

25
```

```
 1    APPEARANCES:   (Continued)

 2
                    RICHARDS LAYTON & FINGER, P.A.
 3                  BY:  NICOLE KATHLEEN PEDI, ESQ.

 4                      and

 5                  SHEPARD MULLIN RICHTER & HAMPTON, LLP
                    BY:  BRADLEY C. GRAVELINE, ESQ.
 6                      (Chicago, Illinois)

 7                      and

 8                  SHEPARD MULLIN RICHTER & HAMPTON, LLP
                    BY:  EVAN SUMNER, ESQ., and
 9                      JESSE A. SUMNER, ESQ.
                        (San Diego, California)
10
                            Counsel for Alembic Pharmaceuticals,
11                          Ltd., Alembic Global Holdings S/A and
                            Alembic Pharmaceuticals, Inc.
12

13                  CONNOLLY GALLAGHER, LLP
                    BY:  STEPHANIE S. RILEY, ESQ.
14
                        and
15
                    PILLSBURY WINTHROP SHAW PITTMAN, LLP
16                  BY:  AHMED ABDEL-RAHMAN, ESQ.
                        (Washington, District of Columbia)
17
                            Counsel for Torrent Pharmaceuticals
18                          Limited and Torrent Pharma

19
                    MORRIS JAMES, LLP
20                  BY:  BRYAN TOWNSEND, ESQ.

21                      and

22                  TAFT STETTINIUS & HOLLISTER, LLP
                    BY:  IAN SCOTT, ESQ.
23                      (Chicago, Illinois)

24                          Counsel for Apotex, Inc., Apotex
                            Corp. and Apotex Research Private
25                          Limited
```

```
 1                            - oOo -

 2                   P R O C E E D I N G S

 3              (REPORTER'S NOTE:  The following telephone

 4   conference was held remotely, beginning at 2:34 p.m.)

 5              THE COURT:  Good afternoon, everybody.  This is

 6   Judge Stark.  I know we have a lot of people there; and I'm

 7   going to ask the lawyers who want to enter an appearance to

 8   identify themselves, starting with the plaintiffs, please.

 9              MR. BLUMENFELD:  Good afternoon, Your Honor.

10   It's Jack Blumenfeld from Morris Nichols for the plaintiffs.

11   Megan Dellinger from Morris Nichols is also on; and from

12   Covington and Burling, George Pappas, Einar Stole, and

13   Brianne Bharkhda.

14              THE COURT:  Okay.  Thank you.

15              MR. BLUMENFELD:  Thank you.

16              MR. PHILLIPS:  Good afternoon, Your Honor.

17   This is Jack Phillips of Phillips, McLaughlin & Hall.

18              And with me on the phone for Zydus are David

19   Abramowitz, Carolyn Blessing, and Tim Peterson of the Locke

20   Lord firm.

21              And on behalf of Sigmapharm, Marc Wezowski,

22   Tom Heneghan, Dustin Taylor, and Tim Meffert from Husch

23   Blackwell.  Thank you.

24              THE COURT:  Thank you.

25              MR. GATTUSO:  Good afternoon, Your Honor.  It's
```

```
 1      Dominick Gattuso from Heyman Gattuso Enerio & Hirzel on
 2      behalf of the defendants.  And with me on the line --
 3      (indecipherable).
 4                  THE COURT:  Mr. Gattuso, can you hear me?
 5                  MR. GATTUSO:  Yes, sir.
 6                  THE COURT:  I'm afraid there is some
 7      interference, and I can't hear you.
 8                  MR. GATTUSO:  I apologize, Your Honor.  Is this
 9      better?
10                  THE COURT:  That's much better.  Yes.
11                  MR. GATTUSO:  Sorry about that.
12                  THE COURT:  I heard you introduce yourself and
13      nobody else, so go ahead, please.
14                  MR. GATTUSO:  Sure.  With me on the phone is
15      Laura Lydigsen, Mark Remus, and Jieun Lee from Brinks Gilson
16      & Leone.
17                  THE COURT:  And which defendants are you for?
18                  MR. GATTUSO:  For Sandoz and Lek
19      Pharmaceuticals.  And my apologies for the bad connection.
20                  THE COURT:  That's okay.  It happens.  Thank
21      you.
22                  Who else, please?
23                  MR. FINEMAN:  Good afternoon, Your Honor.  This
24      is Steve Fineman from Richards Layton on behalf of Prinston
25      and Zhejiang Huahai.  Also on the phone with me are Yixin
```

1    Tang, and I believe Shashank Upadhye has also joined, both

2    from the firm Upadhye Cwik.

3              THE COURT:  Okay.  Thank you.

4              MS. KRAMAN:  Good afternoon, Your Honor.

5              MS. PEDI:  Good afternoon, Your Honor.

6              MS. KRAMAN:  This is Pilar Kraman from Young

7    Conaway for Alkem.  With me on the line is Aaron Eckenthal

8    from Lerner David.

9              THE COURT:  Okay.

10             MS. SCHAD:  Good afternoon, Your Honor.

11   Veronica Schad for defendant Lupin.  With me are my

12   co-counsel in this matter, Joe Janusz, Lance Soderstrom, and

13   Deepro Mukerjee on behalf of Lupin.

14             THE COURT:  Okay.

15             MS. PEDI:  Good afternoon, Your Honor.  This is

16   Nicole Pedi from Richards Layton & Finger for Alembic; and

17   I'm joined on the line by Brad Graveline, Jesse Salen, and

18   Evan Sumner from Sheppard Mullin.

19             THE COURT:  Okay.

20             MS. RILEY:  Good afternoon, Your Honor.  This is

21   Stephanie Riley from Connolly Gallagher on behalf of

22   Torrent.  Also on the line is Ahmed Abdel-Rahman from

23   Pillsbury Winthrop Shaw & Pittman.

24             THE COURT:  Okay.

25             MR. TOWNSEND:  Good afternoon, Your Honor.  This

1    is Bryan Townsend on behalf of Apotex; and also on the line

2    is Ian Scott from Taft Stettinius & Hollister in Chicago.

3                THE COURT:  Okay.

4                MR. GRIVNER:  Good afternoon, Your Honor.

5    Geoffrey Grivner from Buchanan Ingersoll & Rooney on behalf

6    of MSN.  With me on the line are Matt Fedowitz and Grant

7    Shackelford also from the same firm.

8                THE COURT:  Okay.

9                MS. NICOLE:  Good afternoon, Your Honor.  This

10   is Renee Delcollo from Richards Layton & Finger on behalf of

11   Macleod.  I'm joined by Chris Sorenson and Karen Beckman of

12   Merchant & Gould.

13               THE COURT:  Okay.

14               Mr. Blumenfeld, do you believe there are any

15   other defendants represented?

16               (Pause.)

17               THE COURT:  Mr. Blumenfeld, are you there?

18               Are the plaintiffs there?

19               MR. BLUMENFELD:  I am, Your Honor.  I'm sorry.

20   I muted when we had that interference, but I believe all the

21   defendants are on.  There should be 11, and I think they all

22   have appeared.

23               THE COURT:  Yes, I count 11 who have appeared,

24   so thank you.  I have a court reporter with me and to all

25   this; and I'll note for the record it's our case of H.

1    Lundbeck A/S versus Apotex Inc., et al.  I should say

2    plaintiffs are "et al" as well, Consolidated Civil Action

3    No. 18-88-LPS.

4            This is the time that I had originally set to

5    talk about the pending recently filed motions.  We resolved

6    those yesterday, so today I principally want to talk about

7    issues that you all may want to raise relating to discovery

8    and relating to trial.  I also provided you some information

9    yesterday about my schedule; and I know we are all living in

10   unprecedented times and are facing challenges that we did

11   not expect when this schedule was set, so I do appreciate

12   that the parties were interested in at least starting a

13   conversation about some of those issues, about how to get

14   from here to the end of this case; and that is what I

15   principally scheduled our time for today.

16           So with that, I'm going to start with the

17   plaintiffs, and then I will just turn it over to defendants

18   generally.  You all will have to figure out a way to figure

19   out what order you, that is, the defendants, want to be

20   heard.

21           So with that, why don't we start and hear what

22   plaintiffs want to talk about today.

23           MR. BLUMENFELD:  Thank you, Your Honor.  It's

24   Jack Blumenfeld.

25           So we sent you the letter yesterday; and we had

1    in fact spoken very briefly with the defendants' counsel

2    about logistics in terms of expert discovery in terms of

3    moving to a trial, actually just before we got Your Honor's

4    order, so we have started the conversation.

5         And just to give you a very brief summary of

6    where the case is, as I said, we have 11 defendants, there

7    are four patents pending against everyone, and then four

8    other patents that are each pending against one or two

9    defendants.  We are in the middle of expert discovery, and

10   two rounds of expert discovery are done, the first two.

11        So far, there have been 28 experts who have

12   submitted reports, some of them multiple reports.  Six of

13   them are in Europe, one in Canada, and the others are

14   scattered around the United States.  We have another round,

15   the final round of expert reports hopefully, due toward the

16   end of July.

17        We haven't agreed on the expert deposition

18   hours, but that's the conversation we were having yesterday.

19   The parties have exchanged, say, preliminary proposals, and

20   we're starting the conversation.  You know, we have some

21   differences of view there, but however you count it, there

22   is going to be hundreds of hours of expert depositions.  And

23   from our side, from the plaintiffs' side, even before we

24   got your order yesterday, we didn't see how it was doable to

25   finish the expert discovery and prepare for trial in a

1    responsible way and get there by October.  In fact, during

2    the call yesterday, one of the defendants' counsel asked us

3    if we were going to ask to move the trial date, and then a

4    few minutes later we got Your Honor's order.

5                   But from our side, the way we see things, we

6    would like to be able to finish discovery, expert discovery

7    in a much more -- not a leisure way at all, but in a much

8    more reasonable way.  And when we were talking yesterday,

9    we were talking about the possibility of having expert

10    depositions on weekends, double booking, and we would like

11    to do it in a way where we're working to get it done but on

12    a reasonable schedule; and from our side, we think we could

13    get everything done and get the pretrial order done and be

14    ready for trial.

15                   And if it's possible, we would like to get on

16    Your Honor's trial calendar as early in 2021 as we can

17    instead of October.  We think that would permit us to

18    prepare responsibly for Your Honor and for our clients.

19                   We obviously don't know what Your Honor's

20    schedule is like or when you could give us days, but

21    hopefully whenever the trial is from our point of view, we

22    would like to have it live, if that is possible.

23                   As Your Honor had noted at the beginning, the

24    world is in a little bit of a state of flux.  Maybe it will

25    be better early next year, we all hope that it is, but we

1    would -- if at all possible, we would prefer to do a live

2    trial.

3              So that's kind of where we see the case now and

4    where we would like it to be heading.

5              THE COURT:  Okay.  Well, I think it is probably

6    best for me to hear the defendants' perspective.  I may have

7    some questions for you, but let me see who wants to speak

8    first for defendant.

9              MR. ABRAMOWITZ:  Your Honor, this is David

10   Abramowitz for Zydus.

11             I think I will be first; and I'm glad to hear

12   from Mr. Blumenfeld sort of where plaintiffs are.  I don't

13   think defendants are that differently situated.

14             We are -- we believe that this case is close to

15   wrapping up.  We're in the middle of expert discovery, and

16   given Your Honor's schedule and an extra month, for example,

17   for expert discovery into September and October would

18   certainly provide a lot less need for double tracking or

19   weekends or other strenuous situations with expert

20   depositions.

21             I think what we would like is, if we could get

22   on Your Honor's calendar, we don't know when, as early as we

23   can; given that sort of schedule, I think we would like to

24   do a pretrial some time in early November, if we could.

25   That way, we have everything all wrapped up for Your Honor

1       whenever it is you feel like you can get us in.

2               I agree live is always preferable.

3               I am optimistic that the world will continue to

4       change but realistic in that I'm not sure that even in

5       January or February we're going to escape being able to have

6       to do at least part of this via video.

7               I guess where we're standing is we would like to

8       do as much of it consecutively as Your Honor could allow us,

9       at least in terms of, you know, with the family patents, all

10      the experts on that testify within the same week or a set of

11      days.

12              We would like to avoid -- I think it would be

13      easier for Your Honor not to have random this Tuesday --

14      this week on Tuesday we'll have a chemistry person, and then

15      on Thursday a medical doctor, and then the evidence coming

16      in sort of haphazardly without you getting to hear the whole

17      story from each side on each family of patents in sort of a

18      condensed area where you are not having to think back four

19      weeks into what the last expert said.

20              THE COURT:  Okay.  And the only distinction I'm

21      hearing from what Mr. Blumenfeld is saying is if I could get

22      you in for a trial in late November or December, you would

23      prefer that over as early in 2021 as possible; right?

24              MR. ABRAMOWITZ:  I think if we could do

25      something that Your Honor feels like would be organized

1    enough that you're not having to remember three weeks ago

2    what this expert says, that would be preferable, but we

3    understand, if 2021 is the best that your schedule offers,

4    then, of course, we'll take whatever works.

5            THE COURT:  All right.  Are you speaking on

6    behalf of Zydus at this point?

7            MR. ABRAMOWITZ:  Actually, I'm speaking on

8    behalf of all the defendants.  I think that we view this

9    case, as Mr. Blumenfeld said, we nearing the end of expert

10   discovery, we could use more time on depositions to wrap up

11   the PTO, but we're getting ready to go the best and safest

12   that Your Honor thinks do it.

13           THE COURT:  All right.  I appreciate that.

14           I guess in terms of the discovery, you were all

15   in the midst of talking evidently when I hit you with my

16   order yesterday.  It would seem that I should probably give

17   you all time to further those discussions.  Do you have some

18   reasonable confidence, Mr. Abramowitz, that you all could

19   come to an agreement on the number of deposition hours and,

20   if I were to give you a trial date, what a reasonable expert

21   discovery cutoff date would be?

22           MR. ABRAMOWITZ:  I think for certain, Your

23   Honor.  The parties have been working fairly hard at trying

24   to find a compromise that works for everybody, understanding

25   in this very unprecedented world we live in that some things

1    have to be sacrificed where other things hopefully can be

2    made more efficient.

3                    THE COURT:  Right.  And then for the defendants'

4    perspective, as I look at the calendar to try to figure out

5    a trial date, overall, how many days do you think this might

6    be, assuming we were doing, if I had a full day, six-seven

7    hours of trial time a day?

8                    MR. ABRAMOWITZ:  I think that if you have a full

9    day, I guess the question is how many -- there is an

10   invalidity portion and noninfringement portion obviously for

11   the defendants, individual defendants.  That is why primer

12   cases were the defendants will have their experts for a

13   short amount of time talking about their individual products.

14                    I think that for the general case, we could

15   certainly get done in four to five days.  The question is

16   how we would like to space out those infringement experts.

17   That is where the 28 experts that Mr. Blumenfeld discussed,

18   that's over half of them, so ...

19                    THE COURT:  So maybe, roughly speaking, five

20   trial days for all the common issues and then however many

21   days that might be needed for individual infringement

22   related issues?  That is how you would see it?

23                    MR. ABRAMOWITZ:  Yes, I think so.

24                    THE COURT:  All right.  Well, thank you for

25   speaking on behalf of all the defendants.

1    Mr. Blumenfeld, I didn't hear a lot really in

2    dispute, but you may have something to say.  And I would be

3    curious of that estimate as to how long a trial in terms of

4    days it looks to you.

5    MR. BLUMENFELD:  Your Honor, I have just two

6    quick points; and Mr. Pappas may also have some responses,

7    if that is okay with Your Honor.

8    It sounds like Mr. Abramowitz and I are not far

9    apart, the plaintiffs and the defendants aren't far apart.

10    I guess one thing I would say is that if we're

11    talking about expert discovery, expert depositions out to

12    October/September, which I think both sides I think agree is

13    going to be necessary, I don't see how we get to a pretrial

14    conference in early November, but all of this hinges on what

15    Your Honor's schedule is.  I just think that is a little bit

16    optimistic.

17    On the length of trial, I think there are nine

18    days that were originally scheduled; and it may be that we

19    can cut a little bit, some defendants have settled, maybe a

20    couple more will settle, but I would think that it's going

21    to be somewhere between a week and two weeks, and maybe

22    seven or eight days, and how much of that may have to be

23    done remotely is a little bit of an unknown right now.

24    And with that, I guess I don't know whether

25    Mr. Pappas has some things he wants to raise also.

1              MR. PAPPAS:  Good afternoon, Your Honor.  George

2     Pappas for the plaintiff.  Am I coming through loud and

3     clear, Your Honor?

4              THE COURT:  Yes.

5              MR. PAPPAS:  Okay.  The one issue, and I think

6     it's probably applies to both sides, and just for our

7     planning purposes, it would help if we had some indication

8     of how, whenever the trial is, depending on the status of

9     the world and health generally, how you would proceed.  That

10    is, Your Honor, both sides I believe have expert witnesses

11    from outside the United States; and this, of course,

12    implicates travel restrictions that we can't predict.  One

13    possible restriction is U.S. citizens leaving to go to

14    another country but more germanely there may be restrictions

15    either enforced by a foreign company, foreign country on

16    their witnesses traveling and/or by the U.S., should the

17    government decide that there are countries from whom they do

18    not want visitors.  And we can't predict that now.  As Your

19    Honor knows, it could change at any time.

20             So looking ahead to whenever you are able to

21    schedule the trial, Your Honor, would Your Honor be

22    disposed, if necessary, to receive the testimony of an

23    out-of-country witness by Zoom so it would be live in the

24    sense that you would see the witness and direct and

25    cross-examination could be done?

```
1              It's certainly not our preference.  We think

2    they should, to the extent, maximum extent possible be in

3    court; but I'm bringing this up only because it was in your

4    order about the possibility of having some done by Zoom;

5    and I just, we just want to alert the Court that there are

6    expert witnesses and perhaps some fact witnesses that are

7    outside the boundaries of the U.S. and, therefore, depending

8    on the state of the world at the time, may simply precluded

9    from traveling.

10             So any advice or guidance you could give us at

11   this time I think would help both sides there, frankly.

12   Thank you, Your Honor.

13             THE COURT:  Sure.  Thanks for raising the

14   question.  I will speak to that in just a minute.  I'll have

15   some things to say, and then I will give everyone a chance

16   to react and say anything else they want.

17             But Mr. Abramowitz or any other defendant, is

18   there anything else you want to put on the table for now or

19   any response or anything with respect to what you heard just

20   now from Mr. Pappas or Mr. Blumenfeld?

21             MR. ABRAMOWITZ:  Your Honor, this is

22   Mr. Abramowitz.

23             I agree that seven or eight days total could be

24   a possibility, depending on how many defendants settle.

25             I agree with Mr. Blumenfeld, I agree with
```

1  Mr. Pappas that I certainly think even if we were to do some

2  part of this trial live that there are witnesses, and not

3  just internationally, but we have some witnesses as I say

4  scattered throughout the United States.  From states, that

5  Delaware, for example, and other states like Illinois and

6  New York and New Jersey, some states that at the moment they

7  aren't real excited about having people travel from.  So we

8  look to Your Honor's guidance as to Zoom and how you would

9  like to handle that, if that becomes an issue later on.

10          THE COURT:  Okay.  Fine.

11          So let me say a few things based on what you all

12  have told me and the question that you have raised.  And as

13  I say, I will want to hear if there is any response or

14  further things that you want to talk about; but first things

15  first.

16          I do order that you all continue to meet and

17  confer and aim to work out a revised schedule to complete

18  expert discovery.  That includes I hope you will all agree

19  on the number of expert deposition hours and all other

20  issues with respect to the mechanics of it, but I want to

21  hear back from you all in a joint letter that the plaintiffs

22  can submit on behalf of everyone.

23          I want hear back from you by the end of the day

24  Tuesday to indicate again hopefully that you have worked all

25  of that out, and, if not, to flag for me as succinctly as

1    you can what remaining disputes there are so that I can get

2    you a resolution.

3              Now, in terms of trial, I am going to continue

4    trial from October.  That is implicit in what I said

5    yesterday as now I have also become enlightened by the

6    parties' positions.

7              I am going to be looking closely at my calendar

8    with a goal towards getting you a trial date that is

9    telling you what the trial date is by the end of next week.

10   Obviously, I don't mean we're going to trial next week,

11   but I'm having a lot of these conversations, as I'm sure

12   probably you all are in many of your cases, and I need to

13   get some additional responses and input in a few other cases

14   and then look carefully at my calendar.

15             But when I look next week, I'm going to be doing

16   my best to find an eight-day period or, if need be, perhaps

17   two four-day periods as close as possible together, but I'm

18   going to ideally look for an eight-day period some time

19   ideally between December and February, so perhaps as early

20   as December of this year, perhaps as late as February.  I'm

21   going to identify a block or blocks and I'm going to give

22   that to you.

23             Now, what will that mean?

24             More so than in normal time, when I would be

25   scheduling whatever trial date I ultimately give you in that

time frame, I need you to prepare as if it's a real date.
It is a real date, but it is going to be more tentative than
I would like it to be because of the circumstances that are
beyond everybody's control.  So I think you understand what
I mean, but let me just tell you a little bit concretely.

I have trials of one form or another on my
calendar pretty much for every week between August and
March.  I don't know which of those trials are going to
go forward, not just because, of course, I don't know if
parties are going to settle or criminal defendants are going
to plead, but I don't know when for sure it's going to be
safe for me to be in the courtroom again, so I can't predict
which trials that are now set for August, September, October
are going to have to be rescheduled; and I can't predict, of
those, which ones may in fairness just have to take higher
priority than your trial.

For instance, basically if it's a criminal trial
and the defendant is in custody or, of course, has a Speedy
Trial right in all the cases.  If those criminal trials
between now and your date all get continued because it turns
out we can't safely pick a jury and the time we can safely
pick a jury turns out to be the eight days in January, let's
just say that I give you, regrettably, I'm going to have to
come back to you all and say I'm going to need to move your
trial date again.

1          Obviously, I'm going to do my best to preserve

2    whatever trial date I'm able to give you, but I really just

3    am in a situation, as we all are in our world, where there

4    is just so much uncertainty and so little to control what is

5    going to happen next.

6          All that said, that is what I'm going to try to

7    do by the end of next week.  I think we will have a date.

8    You will be on my calendar.  It will be my goal that that is

9    when the trial will be.

10          Now, what will that trial look like?

11          We will tentatively, and I mean "tentative," and

12    I have been putting in a lot of my orders "tentative," we

13    will tentatively schedule this for a live in-court trial.  I

14    agree that that is ideal.

15          I have no way of predicting no better than the

16    rest of you whether December, January, or February, it will

17    be reasonable and safe for us all to be in the courtroom for

18    together, for some of us to be in the courtroom together, or

19    possibly none of us to be in the courtroom together.  So it

20    will be tentatively scheduled as if all is going to be fine

21    and most or all of us will be able to be together, but you

22    have to view that as completely tentative.

23          A corollary to that is I can say now no matter

24    how good the world looks when we get to this trial, I will

25    be extremely open to any request that somebody not come to

1  the courtroom to testify.  So whether that means Zoom

2  testimony, that is fine.  Whether it means having to watch

3  more depositions than we otherwise would, that's fine.

4  Whether there is some other creative way we have to get the

5  evidence, I will be open to all of that.

6          I will not, certainly by next February, I will

7  not be in a position where I will have any interest in

8  ordering a lawyer or a witness to travel to Delaware and

9  come testify live in my courtroom who is in any way

10  reluctant or resistant to do that.

11          Now, all that said, depending on what the world

12  looks like, I think you also need to be prepared for the

13  possibility that if it turns out as we get closer to the

14  trial, and let's just say the plaintiffs tell me that

15  90 percent of their trial team and witnesses can make it

16  safely to court and the defendants tell me only 10 percent

17  of their trial team or witnesses can make it to court, and

18  if any party argues that that is unfair or I intuitively

19  feel to myself that that is unfair, you need to be prepared

20  for the possibility that I will just say that basically

21  nobody is coming to the courtroom.  We'll just do this

22  completely remotely.

23          I'm not hoping for that.  I'm hoping not to have

24  to make any difficult decisions in that way.  Of course, we

25  all hope that this all fully 100 percent fully behind us

1    come December/January/February, but as best as I can tell,

2    none of us know what the world is going to look like at that

3    point.

4            You do have the slight benefit of I have a few

5    bench trials that are ahead of yours that are on my calendar,

6    so I will probably have to confront a lot of these issues

7    before we get to yours; and I am more than willing, if you all

8    request it, to have additional status conferences and talk

9    these issues through as things get closer, but we're going to

10   put you on for what we all hope will be an eight day or two

11   four day close in time trial days in the December to February

12   period, and that we all hope and will tentatively schedule it

13   being live and as in-person as is safe for everyone, but I do

14   need you to understand that while you do have to get ready for

15   that trial, and I'm going to hope that it's a real, it's a

16   real date and a real trial, there is so much uncertainty that

17   a lot of things could throw it off.

18           So that is my guidance and my plan.  I'm happy

19   to talk further if you have any questions or other issues

20   that I may have prompted.

21           Mr. Blumenfeld, or Mr. Pappas, first for

22   plaintiffs?

23           MR. BLUMENFELD:  Not from me, Your Honor.  We

24   will talk to the defendants and hopefully by Tuesday, we'll

25   be able to work something out; and we appreciate your

1  flexibility given where we are.

2          THE COURT:  Okay.

3          MR. PAPPAS:  Same here, Your Honor.  George

4  Pappas.  And I have nothing further.

5          THE COURT:  Okay.  Thank you.

6          Mr. Abramowitz.

7          MR. ABRAMOWITZ:  Thank you, Your Honor.  Nothing

8  really further.  I appreciate your flexibility and your

9  willingness to look at this creatively.

10         We'll certainly talk with the plaintiffs about

11  getting the expert discovery sorted out, but we appreciate

12  your candor and your realistic look at everything; and we

13  will take it one step at a time with you.

14         THE COURT:  Thank you.

15         MR. REMUS:  Your Honor, this is Mark Remus for

16  Sandoz.

17         Defendants do have one more issue they would

18  like to raise with Your Honor, if that is okay.  It's

19  separate from the trial scheduling.  That is why I haven't

20  raised it sooner.

21         THE COURT:  Sure.  That will be fine.  Let me

22  just first ask the blanket to the other ten defendants.

23  Anybody else want to say anything related to the trial or

24  the issues that have already been discussed?

25         (Pause.)

1          THE COURT:  All right.  Sounds like not.  So

2    sure, go ahead and again identify yourself for me, please.

3          MR. REMUS:  Sure.  This is Mark Remus

4    representing Sandoz and speaking on behalf of all

5    defendants.

6          The request we have is as follows:

7          In view of the Court's denial of defendants'

8    motion to strike plaintiffs' expert report from their FDA

9    expert, Dr. Peck, defendants request leave to file a

10   responsive expert report responding to the opinions that

11   Dr. Peck expressed.  If the Court grants leave, we're

12   confident we can reach an agreed schedule with plaintiffs to

13   exchange that report and complete discovery within the time

14   allotted, but we did want to make request and make sure that

15   responsive report was okay with Your Honor.

16          THE COURT:  Right.  Can plaintiffs respond?  Is

17   there any objection to that?

18          MR. BLUMENFELD:  Your Honor, this is Jack

19   Blumenfeld.  I don't want to make this confrontational.  I

20   wish it had been raised with us in advance.

21          But what I would suggest here is permit us to

22   discuss it among ourselves and to discuss it with Mr. Remus

23   and maybe hopefully tell you next Tuesday that there is no

24   issue there also, but I would like the opportunity to

25   discuss it with the people on our side.

1      THE COURT:  Okay.  So I am not, myself, opposed

2    to it, but I'm also not ready to order it over the objection

3    of the plaintiffs, if there is an objection from the

4    plaintiffs.

5         My hope is that you will all work that out, but

6    since you are meeting and conferring relating to expert

7    issues anyway, I think it is wise to have you meet and

8    confer on that specific issue.  If it does turn out that

9    you don't reach an agreement on that, then I should be able

10   to discuss that dispute very briefly in what comes in on

11   Tuesday since I am familiar with the plaintiffs' expert at

12   this point.

13        Does that respond to the question, Mr. Remus?

14   And any questions about that?

15        MR. REMUS:  No, that makes perfect sense.  Thank

16   you, Your Honor.

17        THE COURT:  Okay.  And I actually have a

18   Sandoz-related question, so you may be the one to answer it.

19        I'm just about done with my opinion on the

20   fairly aged motion at this point that you had for dismissal

21   or judgment on the pleadings.  That is still a ripe motion,

22   I take it, that you would like a decision on; is that right?

23        MR. REMUS:  It is, Your Honor.

24        THE COURT:  Okay.  And in terms of, do I need

25   to issue my opinion under seal and give you a chance to

1    redact?  It, of course, talks about the conversion from four

2    to three, but I think we had that discussion in open court,

3    so would you be requesting that I consider issuing that

4    under seal initially?

5                  MR. REMUS:  I believe Your Honor is correct that

6    that is already on the public docket, but I will also -- my

7    colleague Laura Lydigsen is on the phone, and she may have a

8    better recollection on it as well, and she can chime in as

9    well as to whether anything needs to be sealed.

10                  THE COURT:  Thank you.

11                  MS. LYDIGSEN:  Yes, Your Honor.  This is Laura

12   Lydigsen.

13                  The discussion was on a public docket, but

14   Sandoz would appreciate the opportunity to review.  We will,

15   of course, not request redaction to anything that was

16   disclosed in open court.

17                  THE COURT:  Okay.  Understood.

18                  All right.  That was all the issues I had.

19   Anybody else have any other they want to raise?

20                  (Pause.)

21                  THE COURT:  All right.  Well, thank you all very

22   much.  I hope everyone is staying safe and healthy; and I

23   look forward to hopefully some time soon seeing you in the

24   courtroom; and in the meantime, I will look for your

25   submission on Tuesday.

1          **Thank you very much.  Bye-bye.**

2          **(Telephone conference ends at 3:10 p.m.)**

3

4          **I hereby certify the foregoing is a true and accurate**
**transcript from my stenographic notes in the proceeding.**

5

6                      **/s/ Brian P. Gaffigan**
                      **Official Court Reporter**

7                      **U.S. District Court**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25