IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| H. LUNDBECK A/S, TAKEDA PHARMACEUTICAL COMPANY LTD., TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS INTERNATIONAL AG and TAKEDA PHARMACEUTICALS AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LUPIN LIMITED, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) C.A. No. 18-88 (LPS) ) CONSOLIDATED ) ) ) ) |

**LETTER TO THE HONORABLE LEONARD P. STARK
FROM MEGAN E. DELLINGER REGARDING
<u>RESPONSE TO DEFENDANTS' APRIL 21, 2021 LETTER</u>**

| | |
|---|---|
| OF COUNSEL:<br><br>George F. Pappas<br>Einar Stole<br>Christopher N. Sipes<br>Brianne Bharkhda<br>Priscilla G. Dodson<br>Alaina Whitt<br>Han Park<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC  20001-4956<br>(202) 662-6000<br><br>Megan L. Hare<br>Jennifer D. Cieluch<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY  10018<br>(212) 841-1000<br><br>Kurt G. Calia<br>Yiye Fu<br>COVINGTON & BURLING LLP<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA  94306-2112<br>(650) 632-4700<br><br>April 30, 2021 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Jack B. Blumenfeld (#1014)<br>Megan E. Dellinger (#5739)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mdellinger@morrisnichols.com<br><br>*Attorneys for Plaintiffs* |

Dear Chief Judge Stark:

Plaintiffs submit this letter in response to Defendants' letter regarding DTX-1138. D.I. 1065. Plaintiffs respectfully request that the Court strike DTX-1138.

***Defendants had a full and fair opportunity to address DTX-1138.*** Defendants had the opportunity to address the admissibility of DTX-1138 in their responsive brief—and they took it. D.I. 1047 at 83, n.22. Defendants were well aware of the grounds for Plaintiffs' objection. Plaintiffs objected to DTX-1138 as double hearsay during trial. Trial Tr. 150:13–152:10. After trial, Plaintiffs advised Defendants that Plaintiffs maintained their objection to DTX-1138 and "reserve[d] the right to seek to strike it in post-trial briefing should Defendants seek to rely on it." Ex. A at 1. Consistent with the Court's instruction (Trial Tr. 152:12–16), Plaintiffs renewed the objection and moved to strike DTX-1138 in their reply brief because Defendants relied on the exhibit in their responsive brief. D.I. 1054 at 41–44, 41 n.18. That Defendants now contend that they have additional arguments that were not included in their responsive brief does not equate to a lack of opportunity to address the issue. In any event, Defendants have now certainly had a full and fair opportunity to address this issue. Their arguments fail and DTX-1138 should be stricken.

***DTX-1138 is inadmissible and should be stricken.*** Defendants unsuccessfully attempt to show DTX-1138's admissibility, reiterating their arguments under FRE 803(6) and FRE 807 and raising new theories under FRE 803(1) and FRE 803(3). None of these exceptions apply. Defendants have not and cannot cure both layers of hearsay in DTX-1138.

***FRE 803(6):*** FRE 803(6)'s foundational requirements—the document in question must be (1) made at or near the time of the reported event; (2) made in the ordinary course of business; and (3) kept in the ordinary course of business, FED. R. EVID. 803(6); *AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 793 (E.D. Pa. 2008)—are not satisfied. Defendants assert that Lundbeck's marketing department "provided" DTX-1138 to Dr. Dragheim in the ordinary course of business. *See* D.I. 1065 at 1. First, this assertion is contradicted by Dr. Dragheim's testimony. Tr. 143:16–144:12. Second, this assertion is insufficient to satisfy FRE 803(6), which requires a record to be *made* in the ordinary course of business. FED. R. EVID. 803(6)(C). Defendants do not argue, and there is no evidence to show as required by FRE 803(D), that DTX-1138 was *made* in the ordinary course of business or was made "at or near the time" of the interviews described therein. *See* FED. R. EVID. 803(6)(A); 803(6)(C); 803(D). Thus, DTX-1138 does not satisfy FRE 803(6). FRE 803(6) also does not apply to the hearsay within DTX-1138.

***FRE 807:*** Defendants' argument that surveys are admissible under the residual exception of FRE 807, D.I. 1050 at 83 n. 22; D.I. 1065 at 2, continues to be misplaced because ***DTX-1138 is not a survey*** (D.I. 1054 at 42)—let alone a "properly conducted survey." *See Pittsburgh Press Club v. United States*, 579 F.2d 751, 758–760 (3d Cir. 1978); *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 841 (W.D. Ky. 2017). It is a summary of the interviewer's interpretations of qualitative interviews. It does not contain any quantitative respondent data about labeling addressing sexually related adverse events. Courts require surveys to be conducted in accordance with "generally accepted survey principles" and "statistical methods" with "proper safeguards to insure accuracy and reliability." *Pittsburgh Press Club*, 579 F.2d at 758*; see also Deere & Co.*, 260 F. Supp. 3d at 840–43 (the elements of a properly conducted survey safeguard against the classic dangers of hearsay). Defendants have not shown and cannot show this for DTX-1138.

"[T]he case law does not support a general rule allowing surveys into evidence for all purposes." *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 225 (2d Cir. 1999). Surveys may be admissible if they satisfy the requirements of FRE 807—that is, the statements are trustworthy, material, probative, in the interests of justice, consistent with the purposes of the Federal Rules of Evidence, and accompanied by proper notice. *AAMCO Transmissions*, 591 F. Supp. 2d at 799; *BoDeans Cone Co. LLC v. Norse Dairy Sys. LLC*, 678 F. Supp. 2d 883, 903 (N.D. Iowa 2009). The trustworthiness showing has not been made here. *Schering*, 189 F.3d at 232, 234 (trustworthiness determination required even where objecting party commissioned survey); *BoDeans Cone Co*, 678 F. Supp. 2d at 903–05 (survey commissioned by objecting party was found trustworthy because record showed it was conducted "using appropriate methodology" and surveyor "adequately explained the bases for their selection of material"). Defendants have not shown that issues such as "[]insincerity, []faulty perception, []faulty memory, and []faulty narration," *BoDeans Cone*, 678 F. Supp. 2d at 903, are not at play with DTX-1138 because, contrary to the cases they cite, the record lacks details about how the interviews were performed, memorialized, or interpreted and Defendants offered no expert analysis. There is, for example, no information in the record about what, if any, experience/expertise the surveyor had or exactly what questions were asked. Moreover, it is clear that the quoted statements in DTX-1138 are selective and incomplete. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1122 (S.D.N.Y 1993) ("This court cannot conclude that the surveys were 'properly conducted' . . . and therefore concludes . . . that the surveys are inadmissible hearsay.").

FRE 807 also requires "[h]igh degrees of probativeness and necessity." *See AAMCO Transmissions*, 591 F. Supp. 2d at 799 (citations omitted). Specifically, the evidence must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." FED. R. EVID. 807(a)(2). Here, however, testimony of the experts at trial is more probative of how physicians understand Defendants' Prescribing Information than DTX-1138.[1] FRE 807 further requires the proponent of the evidence to identify the hearsay declarant(s) by name. FED. R. EVID. 807(b). Here, that all of the physician declarants are anonymous shows that this is not evidence for which FRE 807 was intended.

This is not the type of "rare situation" justifying application of the residual exception. *Bohler-Uddeholm Am., Inc. v. Ellwood Gr., Inc.*, 247 F.3d 79, 112 (3d Cir. 2001) (residual exception is only to be used "in rare situations"). If DTX-1138 is not stricken, it should be afforded little weight, in light of the serious deficiencies in the evidence presented to establish the reliability and import of DTX-1138 to the present disputes. *See Schering*, 189 F.3d at 234–35.

**FRE 803(1):** The physicians' statements in DTX-1138 are not "present sense impressions." The fundamental premise underlying the present sense impression exception is that the contemporaneity of an event and a statement minimizes the statement's unreliability. *AAMCO Transmissions*, 591 F. Supp. 2d at 796. Here, we do not know that the physicians' statements were

---

[1] Defendants compare a select portion of the draft labeling in DTX-1138 and their Proposed Prescribing Information, D.I. 1065 at 2, while ignoring other key differences. *See* D.I. 1054 at 43. Defendants cite no evidence to support their contention that these differences do not affect physicians' interpretations of their Prescribing Information. Nor do they address how DTX-1138, conducted nearly a decade ago, remains probative of physicians' prescribing decisions today.

made nearly simultaneously upon their review of the draft labeling. Nor do we have a complete record of their interview responses. Moreover, the physicians' statements do not merely describe the draft labeling. Instead the physicians offered opinions and interpretations, including on issues beyond the draft labeling. Those opinions do not qualify as "present sense impressions." *Citizens Financial Group, Inc. v. Citizens National Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) (upholding district court's determination that log entries reflecting the "thought, process, conclusion or interpretation" of defendant's employees were not present sense impressions); *Primepoint LLC v. PrimePay, Inc.*, 545 F. Supp. 2d 426, 443, (D. Del. 2008) (statements that are "conclusions based upon information the recorder had processed rather than contemporaneous or spontaneous statements" did not qualify as present sense impressions) (citation omitted).

***FRE 803(3):*** The physician statements in DTX-1138 likewise do not qualify as "state of mind" expressions under FRE 803(3). FRE 803(3) specifically excludes from its application "a statement of memory or belief to prove the fact remembered or believed . . . ." FED. R. EVID. 803(3). In contravention of this rule, Defendants specifically rely on physicians' statements of belief and memory in DTX-1138. *See* D.I. 1046 ¶ 339 (citing DTX-1138 at 21 ("On an unaided basis, a majority of both PCPs and PSCYHs indicate that they *believe* . . . .") (emphasis added)). Such statements of memory and belief are not expressions of "state of mind" under FRE 803(3). Further, Rule 803(3) does not apply to statements purportedly explaining "*why* the declarant held [a] particular state of mind." *United States v. Nasovsky*, 269 F. App'x 915, 916 (11th Cir. 2008) (emphasis added); *SolidFx, LLC v. Jeppeson-Sanderson, Inc.*, No. 11-cv-01468, 2014 WL 1319361, at *4 (D. Colo. Apr. 2, 2014) (survey containing statements about "customers' bases for [their] thoughts" was not admissible under Rule 803(3)). As DTX-1138 contains explanations of how the physicians interviewed interpreted the draft labeling and why, *see, e.g.*, DTX-1138 at 12, FRE 803(3) does not save it. Yet, DTX-1138's statements of memory, belief, and explanation are necessary to understand it. What remains without them is incomplete, misleading, and would prejudice Plaintiffs. Finally, if FRE 803(3) did apply, it is difficult to see how physicians' state of mind a decade ago about labeling language for an unidentified, unapproved drug that was not used is probative of the disputed issues here.

***Defendants had ample opportunity to obtain discovery about DTX-1138.*** Equity favors exclusion. Defendants contend they "had no reason during the fact discovery period to seek discovery to cement DTX1138's admissibility." D.I. 1065 at 3. But Defendants were well aware of DTX-1138 during fact discovery and did in fact seek discovery about it. Indeed, Defendants used DTX-1138 in their December 4, 2019 deposition of Dr. Dragheim—before the close of fact discovery. Ex. B at 273:7–274:18. As she did at trial, Dr. Dragheim stated that she was not familiar with DTX-1138 and could only "speculate" as to why it was sent to her. *Id.* Defendants never sought additional discovery to support the admissibility of DTX-1138 and instead tried to admit the document via Dr. Dragheim at trial, knowing she could not lay the necessary foundation.

Defendants were interested in DTX-1138 long before induced infringement claims for the '096 Patent were added to the case. More importantly, Defendants never identified, either at the time of Plaintiffs' motion to amend nor any time thereafter, that they required any additional discovery on DTX-1138. D.I. 728 at 3; D.I. 739 at 1. Defendants' decision not to request additional discovery directed toward DTX-1138's admissibility does not equate to a lack of opportunity to do so. Exclusion would not prejudice Defendants. They knew for more than a year before trial that they did not have foundational facts to establish its admissibility, but failed to take any action.

        Respectfully,

        */s/ Megan E. Dellinger*

        Megan E. Dellinger (#5739)

MED/rs  
Attachments  
cc:    Clerk of the Court (via CM/ECF)  
        All Counsel of Record (via CM/ECF and email)

4